21-2220, Minnesota, United Food and Commercial Workers Union, Local Number 663, et al. v. Quality Pork Processors, et al. In November, there was an election. In January, a new president took office. And in March, when the district court issued its decision, the pork processing industry began to realize that the government that had previously supported them on line speed issues now supported the unions instead. With both existing parties to this lawsuit now aligned against their interests, my clients promptly moved to intervene. Intervention is to be liberally granted to allow people to represent and protect their own interests, but the district court denied it here. The court gave just one reason, and that reason was timeliness. But the rule the court applied on timeliness was wrong. The court measured it from the outset of the case. But as the U.S. Supreme Court just made clear in another case where a government changed positions after an election, when the need to intervene is produced by a change in adequacy of representation, timeliness is measured from the point of the change. Counsel, that was two days, right, in the Supreme Court case? Tell me if I'm remembering it wrong. Yes, I believe you're right. It was very short. I'm right, I think, that it said two days. What do you measure your two days from, Counsel? We don't claim that it was two days, Your Honor. How many days do you claim it is, Counsel? That's evasive. How many days do you claim it is? Ours was just over a month. Was it 36, 37? The district court opinion came out on March 31st, and we moved to intervene on May 7th. How many days was it after your amicus brief? I don't know how many days. How many months? You can tell me something rough. I know you're not a mathematician. Oh, the amicus brief was submitted something like nine months before, Your Honor. Thank you. Thank you. I'm really just getting the facts here. And your executives made declarations in the case, too. How long was it after those? Yes, how long was it after those? The same time as the amicus brief, Your Honor, so it was roughly nine months. Thank you for the time. Proceed. I want to go right to the point you're addressing, which is the point of prejudice, Your Honor. And it links to the question of timing on this, because under the Supreme Court's rule, timing is measured from the point of the need to intervene, not from the point of earlier. And this is really important. The prejudice arguments that they're making go to the merits, not to intervention. Prejudice matters as to timing on that. It is not an independent factor under Rule 24 on this. And their arguments would have a lot greater force had my clients been parties to this suit and have been represented. They weren't. They were relying on the USDA, and the declarations they supported were factual declarations to support the USDA. There is no obligation of an unrepresented party in a case to make all legal arguments to preserve them in a factual declaration. That's what they're arguing here. The timeliness, and I want to go back to this, Your Honor, because this is really important. Prejudice in the context of this consideration is prejudice arising from timeliness. This court has said, and I'm just going to read, it's the United States versus Union Electric decision. It said, the prejudice is whether prejudice caused, quote, by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change. Of course, it is prejudicial to the unions in this case to allow the employers to be heard. That is not unfair prejudice. It's like evidentiary issues. Sometimes the most prejudicial evidence is there because it's most relevant. The arguments in this case that we're making are what naturally happened as a result of this court's decision. The time to make those was after the United States changed its position, and that's why I want to go back to Cameron. This is the quote. The attorney general's need to seek intervention did not arise until the secretary ceased defending the state law. The timeliness of his motion should be assessed in relation to that point in time. The concurrence by Justice Kagan says the same thing. The intervention motion, though coming late in the suit, was still timely. The attorney general intervened as soon as he had a reason to do so. Counsel, to what extent do you think the Supreme Court is relying on the fact that the attorney general was a party to other agreements and decrees?  Yeah, I think, if anything, that would have cut against it there because the attorney general in that case had been a party and then was dismissed. And then the attorney general had previously represented the secretary and then withdrawn. And they still allowed the attorney general to intervene after the point. We were never a party and we never represented anyone else. The first time we could come in was when the government changed. We've cited this court's cases. FTC versus Johnson is one. North Dakota versus the United States is another that says when the government is a party, it's presumed to be an adequate representative. And differences of opinion over remedies is not enough to make them inadequate. As long as they're supporting the same bottom line, the parties whose interests are there are adequately represented. But when the government changed positions on the bottom line here, the bottom line being, could you use the higher line speeds? When they switched on that, suddenly our separate interests were at play and we had a right to intervene. But weren't your separate interests at play from the very beginning in the sense that even if the government continued to advocate the initial position that it took, they could have lost? And that puts that puts you your issue squarely there from the beginning. So why wouldn't you? In other words, it's not really the same issue. Your issue only comes into play if the government loses the lawsuit, which it ultimately did. Shouldn't that have been anticipated as it appeared to have been in the amicus brief? Your Honor, I think you're right that from the very beginning, our interest was in operating higher line speeds. The government was was doing that. And so it wasn't for women. Let me let me refine that just a little bit. And if if we lose this lawsuit, we want to operate under the prior waivers. So it's not exactly the same issue. It's kind of a contingent issue, so to speak. I agree entirely that it's a contingent issue. And because it was contingent, that's the reason we couldn't intervene earlier. Because contingent disagreements over remedies about what happens down the line are not a basis to intervene and intervene and make it inadequate. And that's that's FTC versus Johnson. It says that direct on that. And and that's that's the point here is that even though we may have disagreed with the United States on some things down the line. And to be clear, it wasn't clear at all that we did disagree with the United States. If you look at their earlier filings all the way up through summary judgment, the United States is a very careful litigant. And they never addressed what the law would be if they were to lose on this. They addressed standing by the plaintiffs. They addressed the procedure of their enactment. But doesn't doesn't doesn't that doesn't that fact prove that they weren't really representing you, your clients interests from the beginning, so to speak? Well, Your Honor, they were defending the ability to operate at higher line speeds. And this is the reason I cite this. This is the North Dakota versus United States case. And the same thing, environmental groups moved to intervene there. Some counties in North Dakota were trying to get rights of way over U.S. land on section lines. Environmental groups said we have very different interests from the United States here. We're motivated differently. And this court said that's not enough because what's at issue here is who owns this. And the United States is defending its ownership in the same way here. We have interests that may vary down the line, but that wasn't enough because the United States was defending the line speeds. There is. You're right that the next question down is if you get all the way through the issues here, then what law applies? It is a successive issue, not the front issue. That's what it is. And because intervention is liberally granted here, I don't think your honors need to wrestle all the way to the ground. Whether we had moved to intervene sooner, we would have lost. I think we would have under this court's precedent. But the real question, timeliness has mattered under all the circumstances. And this is what the United States Supreme Court did in Cameron. When there's a change in representation, that's the most important circumstance. We cite Cameron because the United States and the Supreme Court are new. But Smolt versus Norton, we cited as the D.C. Circuit case doing the same thing. We cited Sierra Club versus. So while we're counting the cases, we have this case wholesale grocery. Yes. In twenty seventeen. It says if you're aware of the litigation for a significant period of time, that is a heavy factor against allowing intervention. I'm paraphrasing the court. Do you think Cameron overrule that? No, I think it's a different situation. There is no adequate representative in wholesale grocery. There wasn't a government party. There wasn't an adequate representation. There wasn't a change of position. Wholesale grocery doesn't address this at all. That that's why it's different in the cases that address a formally adequate representative, especially when it's the government and a change in position by the government. The analysis is all uniformly across the board. Every court that has addressed it, the same thing that Cameron does, that this is not something unusual. And it feels a little odd because the rule protecting government adequacy is so broad. The rule says even if you agree on some small details like strategy or things, you still can't intervene. That that's the rule. But when the government changes on the big thing here, it switched from supporting line speeds to after after the election, not supporting them supporting it. When when it's there, isn't that there isn't the elephant? There is the elephant in the room. And I read your 28 days. But boy, it certainly seems to me to weaken your position now that you've got fast line speeds again. And I read your 28 days. So tell me why that's not you know, this is all abuse of discretion, right? Well, abuse of discretion applies. Well, it didn't exist then, so it couldn't have been part of the exercise of discretion. And discretion only goes to timeliness, not. Yeah, but we're reviewing it now. We're reviewing it now. Proceed. De novo. So it can't have affected standing because standing was measured back then and it didn't exist. If it affects anything, it's only mootness. I think it's an open question whether mootness can ever matter on a motion to intervene because mootness by definition happens later in the case. I think it probably is something that would have to be evaluated after you're in. But if this court is concerned about it, we should have briefing on that because nobody has briefed it. But to cut to the bottom line, there couldn't possibly be mootness here because one of the plants that's my client had received a new trial. So that's even if you're concerned, you just cut through the chase and do that. I'll reserve the remainder of my time for rebuttal, your honors. Very well. I'll hear more fan on behalf of the USDA. Thank you, Your Honor. Good morning. May it please the court. Dennis fan on behalf of the United States. As your honors have noted, the pork processing plants here understood that if USDA did not prevail on summary judgment, that the district court's decision would require them to decrease their line speeds. The district court then carefully presided over the case, carefully weighed the proper remedy on summary judgment based on the summary judgment papers, enters summary judgment, and then even provided 90 days for industry to adjust to decreasing their line speeds. The court wasn't obligated to grant intervention just so the plants could come in to present a contradictory legal theory after summary judgment that they were not required after all to decrease their line speeds. I do want to start with a few of the questions that your honors have been asking and focus on so far. One is the Cameron case from the Supreme Court, because I actually think it really does help us here. Cameron was about a party trying to take over a defense of the government's regulatory action after the government had abandoned that defense. But the problem with Cameron is that parties here, the interveners here, aren't trying to defend the NSIS rule. They don't want to come in and defend the NSIS rule after a change in position. Instead, the government's position, the fundamental position that is different than the intervener's position, was clear on summary judgment as soon as the government filed its summary judgment papers. And you can see this on page 121 of the record of the USDA appendix. USDA says, if the final rule is vacated, any establishments that had converted to NSIS from the traditional inspection system at that time would incur significant costs to revert to the traditional inspection system. What was clear at that moment was that there was a difference in position. It wasn't like a case like Cameron where the difference in position only became clear later on. And the amicus brief here filed by the same law firm, by an industry organization that includes all the same members that are attempting to intervene now. If I understood Mr. Van Ortz's argument correctly, his argument is that that's a contingent issue that doesn't become sort of, for lack of a better term, ripe until the court decides against their and at least the initial position of the USDA. And that they're not required to anticipate this sort of contingent issue in terms of the timing of when they intervene. If I've characterized that correctly, what's your response? I think the proper response is everyone did realize the contingency of what would happen if USDA did not prevail on summary judgment. We briefed up extensively in our appendix. I don't think he's running from that. I think he concedes that. And it seemed obvious from the amicus briefings and the declarations. But he says the law doesn't require that or doesn't require that they intervene at that time. Because it's a contingency. So I think I have two responses. I don't know if it's a contingency in the way that opposing counsel is thinking of a contingency. It has to do with the relief on a cause of action. This is part of the fundamental cause of action of what happens when you vacate an agency action. You can't really enter judgment without that. It's part and bundled up with everything together. And the second aspect of that is even setting aside that the contingency here of what the remedy should be was well recognized. I think the district court was really careful here. The district court gave 90 days for industry to adjust to decreasing line speeds for USDA to respond. As we note in our 28 days, USDA has now sort of responded to the district court's decision in part by implementing these time limited trials. And the fundamental point is that the district court wasn't obligated to then facilitate even more litigation on a new issue when that wasn't part of the original cause of action. That wasn't part of the original case. When you have a court that has sat over a case for a long time, that's carefully considered everything, that's carefully considered the remedy, and a party wants to, or a non-party wants to come in later on and say, Hey, summary judgment's been granted, but I would love for you to keep litigating on a new issue that's never been presented to the court before. Well, counsel, while you're making that point, and I'm sorry I glanced through it and can't tell, did the district court cite the declarations that were in the amicus brief in her 60-some page order? You know, honestly, your honor, I can't recall, but the one thing I will— Okay, did the district court cite the amicus brief, the declarations, or the brief itself, the amicus brief? Don't worry, we'll check it out. Yeah, yeah, I apologize. I don't actually know if they cited the exact same thing. Maybe Mr. Polver knows, so proceed. The one thing I will say about those factual declarations, I wouldn't just characterize them as factual declarations. Counsel made representations based on those factual declarations. They filed an amicus brief that was the same law firm that now represents the interveners here. So those aren't just factual declarations. They are, you know, well-counseled parties in that case. I see my time has elapsed, and unless this court has further questions, I would cede my time to Mr. Polver. Thank you, Mr. Phan. Mr. Polver, you may proceed. Good afternoon, your honors. Adam Polver for the UFCW appellees. I want to just pick right off, right where Judge Benton was going. Judge Erickson did cite the declarations of Clemens that's at page 107 of the appendix in her summary judgment decision. OK, you know what page it was of her actual opinion? I know you said 107, but I've got— 64. 64? Thank you. And did she cite the brief? Did she cite the brief? She did, also on page 64, and she specifically pointed to Clemens, one of the appellants here. Yes, correct. So I think that pulls into, you know— Cameron reaffirmed that you look at the totality of the circumstances in the timeliness inquiry, and it also reaffirmed that it's an abuse of discretion standard. Here, the district court oversaw this litigation for a year and a half. The district court said that had the plants raised this issue at the summary judgment phase, it would have considered it, and we have no reason to doubt, given that Judge Erickson did add this 90-day stay period in crafting a remedy, we have no reason to believe Judge Erickson would not have done so. And I apologize, there's Judge Erickson and Judge Erickson in this case. But this idea that the district court would not have considered it and said it was premature, there's no support in the record for that, and there's no support in the case law for that either. Regulated industry intervenes all the time in cases where a regulator is being challenged because, as this court's case law acknowledges, sometimes the interests overlap, sometimes they don't. Here in particular, where these plants assert they have a different interest than every other member of the regulated industry, intervention certainly would have been appropriate. This is—in fact, this is a case where they could have made this argument and should have known when the district court unusually issued an order specifically directing the parties to address remedy in the scope of summary judgment briefing. This is—I mean, whereas in APA cases the parties brief remedy all the time, this is a particularly specific case where there was a separate order that said the parties should address remedy and vacater in the course of their summary judgment briefing. And this isn't a case where USDA ever changed its relevant position. USDA, in its reply brief on summary judgment, pointed to the declarations submitted by AMICI and said, yeah, these hemp plants, they're going to have to roll back to the line speed. So at the very latest, at the time of that reply brief, these plants heard that, wait, wait, wait, wait, wait, we need to intervene here because we think that there's an automatically we get our waivers back and this discretionary hemp program automatically springs back to life. But they didn't do that. Instead, they just said, we're going to keep saying you can't vacate, Your Honor. And so they only waited until after and took a second bite at the apple. Now, there was no indication that any administration, no matter who won the election, was going to change its view. And the plants couldn't count on a change of view, which is essentially what they are arguing here. They're saying, well, we thought we would have convinced USDA to change its view. That's not not not appropriate. That's not the Cameron situation. So the election really has nothing to do with this case. And if you look at the brief that was applied. Well, that's that's a very broad statement, but that that we won't we won't proceed to have nothing to do with it. Sure. Yeah. But let me let me ask you a different point. Your opponent stresses a lot of our cases. Now, which do you think are the best cases for your position? So I think the Ritchie case, which, Your Honor, was on the panel for this court said, quote, When a party had knowledge of all the facts and failed to raise the issue when first presented with an opportunity to do so. Subsequent intervention is untimely. And I think that squarely resolves this case because. The plants knew that USDA was not arguing that hemp would be they would be required to reinstate the hemp program, that that pilot would come back to life. They could have intervened when they filed amicus briefs. They could have intervened any time in the nine months where the summary judgment motions were pending after the summary. The reply brief was filed. They did not. Instead, they waited till afterwards. I'd also point to another aspect of the Ritchie decision. The Ritchie decision takes a different view of the prejudice factor than my opponent has suggested in Ritchie. This court said, well, prejudice actually looks at a lot of things. One of the things in Ritchie is actually you look at the prejudice of not being able to intervene, whether there are adequate other alternatives. And obviously, since they are able to get waivers without intervening in this case, there seems to be other ways for them to get involved. Ritchie referred to other litigation, no counsel. It was referring to other litigation. Yes, I see. But there are other cases from this court, including the it's one of the desegregation cases. I'm blanking on the name where it said that actually advocacy before the school board in that case was as an as an available option that would countervail any any finding of prejudice. I think also the Minnesota milk producers case from this court where this court affirmed a district court's discretionary finding of untimeliness is on point in that court. The district court said it was hard to believe that the interveners didn't realize what was at stake in that case earlier in the case and waited to intervene. And that's what happened here. As we've been discussing, it was very foreseeable that USDA would lose. Even if USDA had appealed, USDA could have lost. Even if USDA had appealed and sought cert, cert could have been denied. We'd be back here today three years from now because this issue would never have been addressed in an appeal. Hemp plants were never going to be treated differently in the underlying case. And there's no reason for these plants to have assumed they didn't. And in fact, the fact that they submitted the declarations, it's not an issue of a stopple or prejudice. It goes to the factual issue of knowledge. They knew what was at stake at this case. So we can hold that against the plants just for evidence of their knowledge of a factual question. And the district court certainly could do so. And that conclusion of the district court is reviewed for abuse of discretion. There is no question that the district court applied the four factor test that this court has required. The judge certainly has very familiar with this case. The district judge knew what was before her. She knew these issues were present the entire time. And there's no reason why these issues could not have been raised. And there's no reason to believe the district court would not have addressed these issues had the district court done so. And really, this is a case where there's regret for not making this argument before. And there's trying to get a strategic second bite at the apple. And this court really is not required to allow liberally, even under a liberal construction of the timeliness factors, to allow such kind of strategy to play into the analysis here. Briefly, just one final point on Cameron. I think Cameron did not change the law in this area at all. All this court's precedent remains the same, including Richie and including all the cases cited. Cameron is a factual scenario, not present here. And I'd point out that these plans actually explicitly disclaimed in the reply brief to this court that they were seeking to appeal the district court's determinations with respect to NSIS. So it's a completely different factual scenario and should have no bearing on this court's opinion. Unless the court has any other questions. Thank you. Hearing none. Thank you, Mr. Pover. Mr. Van Orch, your rebuttal. You'll need to unmute your microphone, Mr. Van Orch. Thank you, Your Honor. The question isn't whether an intervening party could raise an argument earlier. The question is whether it could intervene earlier. Because you can always raise an argument earlier as an amicus. And if that were the case, things would always be untimely. That's not the rule. The question is whether you could intervene earlier. The United States is precluded from arguing that we could intervene earlier because even after summary judgment, they opposed our intervention on the grounds that they were still adequately representing us. Although Mr. Pover now on appeal in oral argument for the very first time argues that we could have intervened earlier, he took exactly the opposite position in his briefing below and on appeal where he said that we never had a direct interest to intervene ever. He can't change now. They're trying to create a catch-22. Can't intervene earlier because of adequate representation and lack of interest. Can't intervene earlier because it's too late. This is gamesmanship, and it's directly contrary to the liberal pull of Rule 24, which says when a party has direct interest at stake, it should be allowed the right to be heard. That's the holding of this court in National Parks Conservation. It says when a third party files suit to compel the government to do something that would directly harm the regulated entity, they have a strong interest in being heard. Wouldn't it be strange if the only party here subject to government coercion were not ever given the chance to be heard? It was denied that chance earlier under this court's cases because of government adequate representation, but now the adequate representation is gone. The United States doesn't even argue it anymore. They argued it in the district court, and they said essentially we were intervening too early because they hadn't admitted publicly yet that they were changing positions. And the district court, through no fault of her own, took them at their word. As soon as she denied the motion to intervene, they changed positions. That's why the rulings of the Smoke case that you said is that the government doesn't have to admit it yet. As soon as it starts equivocating, that's when it's timely to move to intervene. The merits, as I said, the waiver argument, that goes to the merits. The district court will be able to decide whether factual declarations supporting an amicus earlier preclude a party from arguing a legal issue. That goes to the merits, though, not here. The Supreme Court did the same thing with a waiver argument in Cameron. And this court's case in Turnkey Gaming makes this clear, and it basically says an application for intervention can't be resolved by reference to the ultimate merits unless the claim and the allegations are frivolous on the face. There's nothing at all frivolous about our arguments here about administrative law. There's nothing at all frivolous about the position that making a factual declaration supporting an amicus when the government is adequately representing you does not bar you from making your independent legal arguments later. We're entitled to intervene as a right, so this court should reverse. Thank you. Thank you, counsel. We appreciate your appearance and arguments today. The case is submitted, and we'll issue an opinion in due course.